**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------- X
                                                          :
In re                                                     :        Chapter 11
                                                          :
8200 REALTY ASSOCIATES LLC, *et al.*,                     :        Case No. 23-42775 (JMM)
                                                          :        (Jointly Administered)
                    Debtors.[1]                           :
                                                          :
                                                          :
                                                          :
--------------------------------------------------------- X

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
## OF 8200 REALTY ASSOCIATES LLC

**DAVIDOFF HUTCHER & CITRON LLP**
Jonathan S. Pasternak
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
*Attorneys for the Debtor*

**HERRICK, FEINSTEIN LLP**
Steven B. Smith
2 Park Avenue
New York, New York 10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
*Attorneys for Valley National Bank*

Dated:   September 20, 2024
              New York, New York

---

[1]    The debtors are 8200 Realty Associates LLC, Case No.: 23-42775, with a mailing address at 8200 Bay Parkway, Brooklyn, New York 11214; and 4112 Realty LLC, Case No. 23-42768, with a mailing address at 4112 4th Avenue a/k/a/ 373-377 42nd Street, Brooklyn, New York 11232.

8200 Realty Associates LLC (the "Debtor") and Valley National Bank, a New Jersey corporation, as the senior secured and largest creditor to the Debtor ("VNB"), jointly propose the following First Amended Chapter 11 Plan of Liquidation pursuant to Bankruptcy Code section 1121(c). Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

A.    **Definitions**. The following terms shall have the respective meanings specified below:

1.1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Case pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b) or 1114(e)(2), including all fees and charges assessed against the Debtor's estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1.2.    "*Allowed*" means, with reference to any Claim or Interest, a Claim or Interest: (a) arising on or before the Effective Date as to which: (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to Bankruptcy Code section 502(d) or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; or (ii) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor or the Disbursing Agent; (c) as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; provided, however, that notwithstanding the foregoing: (x) unless expressly waived in the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including Bankruptcy Code sections 502 and 503, to the extent applicable, and (y) the Debtor and the Disbursing Agent, shall retain all claims and defenses with respect to Allowed Claims.

1.3.    "*Asset*" means all of the right, title, and interest of the Debtor in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.4.    "*Assigned Contract*" is an executory contract or unexpired lease that will be assumed by the Debtor and assigned to the Purchaser in connection with the Sale.

1.5.    "*Assumption and Assignment Procedures*" are those procedures in the Bid Procedures Order regarding the assumption and assignment of an Assigned Contract.

1.6.    "*Assumption Dispute*" means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365.

1.7.    "***Auction***" means the public auction of the Property held on July 30, 2024, at the office of Northgate Real Estate Group, 1633 Broadway, New York, New York 10019 pursuant to the Bid Procedures.

1.8.    "***Avoidance Actions***" means any and all actual or potential Causes of Action of the Debtor arising under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance action claims, rights, and causes of action, and commercial tort law, to the extent not previously transferred, sold, assigned, or waived under any prior order of the Bankruptcy Court in the Chapter 11 Case.

1.9.    "***Ballot***" means the form(s) distributed to holders of Impaired Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

1.10.    "***Bankruptcy Code***" means title 11 of the United States Code, as amended from time to time.

1.11.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Eastern District of New York.

1.12.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local bankruptcy rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

1.13.    "***Bid Procedures***" means the bid procedures approved by the Bankruptcy Court per the Bid Procedures Order.

1.14.    "***Bid Procedures Motion***" means the motion to approve the Bid Procedures and related relief filed on March 20, 2024 [Dkt. No. 63].

1.15.    "***Bid Procedures Order***" means the Order entered by the Bankruptcy Court on May 2, 2024 [Dkt. No. 81] approving the Bid Procedures Motion.

1.16.    "***Broker***" means Northgate Real Estate Group.

1.17.    "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.18.    "***Cash***" means legal tender of the United States of America.

1.19.    "***Causes of Action***" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license or franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or

derivatively, belonging to the Debtor, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in Bankruptcy Code section 558; and (e) any state law fraudulent transfer claim.

1.20. "*Chapter 11 Case*" means the chapter 11 proceeding styled *In re 8200 Realty Associates LLC et al.*, pending as Case No. 23-42775 (JMM) (Bankr. E.D.N.Y.).

1.21. "*Claim*" means a "claim," as such term is defined in Bankruptcy Code section 101(5), against the Debtor or the Debtor's estate.

1.22. "*Class*" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

1.23. "*Closing Date*" means the closing date of the Sale.

1.24. "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.25. "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.26. "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan.

1.27. "*Cure Amount*" means the Cash or other property to be paid or distributed by the Debtor as necessary pursuant to Bankruptcy Code section 365(b)(1)(A) to permit the Debtor to assume or assume and assign any executory contract or unexpired lease.

1.28. "*Debtor*" means 8200 Realty Associates LLC.

1.29. "*Debtor in Possession*" means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to Bankruptcy Code sections 1101, 1107(a), and 1108.

1.30. "*Definitive Documents*" means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to, the Sale pursuant to the Plan, including, but not limited to: (a) the Plan; (b) the Disclosure Statement and the related solicitation materials to be used in connection with solicitation of votes to accept or reject the Plan; (c) the Disclosure Statement Order; (d) the Confirmation Order, (e) the Plan Administration Agreement and (f) the Sale Contract.

1.31. "*Disallowed*" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.32.    "***Disbursing Agent***" means Davidoff Hutcher & Citron LLP, counsel to the Debtor.

1.33.    "***Disclosure Statement***" means the disclosure statement for the Plan.

1.34.    "***Disclosure Statement Order***" means the order entered by the Bankruptcy Court approving the adequacy of the Disclosure Statement pursuant to the Bankruptcy Code, which order may be the Confirmation Order.

1.35.    "***Distribution Fund***" means: (i) the proceeds of the Sale approved by the Bankrutpcy Court pursuant to the Plan; (ii) any proceeds recovered by the Debtor or Disbursing Agent from any Causes of Action; and (iii) any Cash on hand, including any receiver funds.

1.36.    "***Disputed***" means a Claim or Interest, including an Administrative Expense Claim: (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under Bankruptcy Code sections 502, 503, or 1111 or Bankruptcy Rule 3003(b)(1); or (b) as to which the Debtor, the Disbursing Agent, or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

1.37.    "***Effective Date***" means the date that is the first business day after the date on which the Court enters the Confirmation Order on which: (a) the conditions to the occurrence of the effective date under the Plan have been satisfied or waived; and (b) no stay of the Confirmation Order is in effect.

1.38.    "***Entity***" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in Bankruptcy Code section 101(27)) or any political subdivision thereof, or other person (as defined in Bankruptcy Code section 101(41)) or other entity.

1.39.    "***Estate***" means the estate of the Debtor created under Bankruptcy Code section 541.

1.40.    "***Exculpated Parties***" means collectively, and in each case, solely in their capacities as such: (a) the Debtor; (b) the Disbursing Agent; (c) VNB and its representatives and advisors; and (d) any professionals retained by the Debtor in connection with the Chapter 11 Case.

1.41.    "***Fee Claim***" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor in the Chapter 11 Case by an order of the Bankruptcy Court pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, or 503(b) and also includes the fees of the Receiver.

1.42.    "***Final Order***" means an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that: (i) is in full force and effect; (ii) is not stayed; and (iii) is no longer subject to review, reversal, vacatur, modification or amendment, whether by appeal or by writ of certiorari.

1.43.    "***Impaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, such Claim or Interest is "impaired" within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

1.44.    "***Indemnity Claims***" means any Claims against the Debtor by any current or former officer or director of the Debtor for indemnification.

1.45.    "***Insured Claims***" means any Claim or portion of a Claim that is, or may be, insured under the Debtor's insurance policies.

1.46.    "***Interest***" means any equity security, as such term is used within section 101(16) of the Bankruptcy Code, in the Debtor.

1.47.    "***Lien***" has the meaning set forth in Bankruptcy Code section 101(37).

1.48.    "***Mechanic's Lien Claim***" means any Claim against the Debtor or its Estate perfected in accordance with section 9 of the New York Lien Law.

1.49.    "***Mechanic's Lien Holder***" means Good-Will Mechanical Corp.

1.50.    "***Other Secured Claim***" means a Claim, other than the Senior Secured Claim, to the extent: (i) secured by a valid, perfected and enforceable Lien on property of the Debtor's estate, the amount of which is equal to or less than the value of such property as (a) set forth in the Plan; or (b) determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with Bankruptcy Code section 553.

1.51.    "***Person***" means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

1.52.    "***Petition Date***" means August 3, 2023.

1.53.    "***Plan***" means this First Amended Chapter 11 Plan of Liquidation, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code.

1.54.    "***Plan Supplement***" means a supplemental appendix to the Plan containing, among other things, form of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court including the Plan Administration Agreement only in the event of a Sale. The documents comprising the Plan Supplement may be filed on an iterative basis; provided, however, that all such documents shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to the Plan. The Debtor shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date, in accordance with Section 12.6(b) of the Plan.

1.55.    "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in Bankruptcy Code section 507(a)(8).

1.56.    "*Pro Rata Share*" and "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears relative to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class.

1.57.    "*Property*" means the Debtor's real property located at 8200 Bay Parkway, Brooklyn, New York 11214.

1.58.    "*Purchase Price*" means the amount of money and other consideration to be paid by Purchaser pursuant to the Sale Contract on the Closing Date.

1.59.    "*Purchaser*" means the Successful Bidder selected in accordance with the Bid Procedures to purchase the Property pursuant to the Plan.

1.60.    "*Receiver*" means David Vaughan, Esq, the receiver appointed in the State Court Action for the Property.

1.61.    "*Receiver Funds*" shall mean the balance of the Receiver's funds estimated as $104,646.99 as of July 31, 2024.

1.62.    "*Sale*" means the transaction in which the Purchaser, on the Closing Date, shall purchase the Property free and clear of any and all Liens, Claims, encumbrances and other interests in exchange for paying the Purchase Price to be distributed in accordance with the Plan.

1.63.    "*Sale Contract*" means the purchase and sale agreement to be entered into by and between the Debtor and the Purchaser on the Closing Date.

1.64.    "*Sale Proceeds*" means the proceeds from the Sale of the Property to the Purchaser received by the Debtor on the Closing Date.

1.65.    "*Sale Process*" means the process run by the Debtor and the Broker to market the Property in accordance with the Bid Procedures and pursuant to the Plan.

1.66.    "*SBA*" shall mean the Untited States Small Business Administration.

1.67.    "*SBA Claim*" shall mean the Class 2 Claim of the SBA.

1.68.    "*Schedules*" means the Debtor's schedules of assets and liabilities and statement of financial affairs [Dkt. Nos. 1].

1.69.    "*Secured Claim*" means a Claim to the extent: (i) secured by a valid, perfected and enforceable Lien on property of the Debtor's estate, the amount of which is equal to or less than the value of such property as (a) set forth in the Plan; or (b) determined by a Final Order in

accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with Bankruptcy Code section 553.

1.70.    "***Senior Secured Claim***" means a Secured Claim arising under or related to: (a) that certain Consolidated and Restated Mortgage Note, dated August 30, 2018, made by 8200 Realty to VNB, in the principal sum of $4,700,000.00; (b) that certain Absolute Assignment of Leases and Rents, dated August 30, 2018, made by 8200 Realty to VNB; (c) that certain Building Loan Agreement, made by 8200 Realty to VNB, filed with the Kings County Clerk on September 25, 2018, as control #003793188 01; (d) that certain Building Loan Note, dated August 30, 2018, made by 8200 Realty to VNB in the principal amount of up to $800,000.00 and secured by that certain Building Loan Mortgage and Security Agreement, made by 8200 Realty in favor of VNB, dated August 30, 2018, and recorded on October 3, 2018 in the Recorder's Office in CRFN 2018000328737 to create a second priority mortgage lien on the Mortgaged Premises; (e) that certain Absolute Assignment of Leases and Rents made by 8200 Realty to VNB; (f) that certain Carveout Guaranty of Payment, dated as of August 30, 2018, executed by Ira J. Epstein and delivered to VNB to further secure repayment of all amounts due under the terms of the Note; (g) that certain Guaranty of Payment, dated August 30, 2018, executed by Ira J. Epstein and delivered to VNB to further secure repayment of all amounts due under the terms of the Note; (h) those certain Notices of Default and Acceleration Demand for Payment and Notice of Imposition of Default Interest Rate dated July 18, 2022, pursuant to which VNB provided a written notice to 8200 Realty that they had defaulted under the Loan Documents by failing to repay the Loan upon maturity; (i) that certain UCC-1 Financing Statement recorded on September 5, 2018, in the Office of the City Register of the City of New York at CRFN 2018000297654; (j) that certain UCC-1 Financing Statement recorded on September 5, 2018, in the Office of the City Register of the City of New York at CRFN 2018000296991.

1.71.    "***State Court Action***" means the action commenced by VNB styled *Valley National Bank v. 8200 Realty Associates LLC*, Index No. 501073/2023 (Kings Cnty. Sup. Ct.).

1.72.    "***Tax Code***" means the Internal Revenue Code of 1986, as amended from time to time.

1.73.    "***U.S. Trustee***" means the United States Trustee for Region 2.

1.74.    "***Unimpaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

1.75.    "***Unsecured Claim***" means any Claim that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, or (iii) a Secured Claim.

1.76.    "*Wind Down*" means the wind down, dissolution, and liquidation of the Debtor and distribution of any remaining assets under a Sale scenario in accordance with the Plan.

1.77.    "***Wind Down Budget***" means a budget for the Wind Down of the Debtor in the event of a Sale scenario.

B.      **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      **Controlling Document**.

Subject to Section 8.2 herein, in the event of any conflict between the Plan and the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan, the Plan shall govern and control, provided, however, that in the event of a conflict between the Confirmation Order and any of the Plan, the Disclosure Statement, or any other Definitive Document, the Confirmation Order shall govern and control in all respects.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS

2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim), shall receive from the Debtor or Disbursing Agent in full and final satisfaction, settlement, and release of such Claim against the Debtor, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of: (a) the Effective Date; and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. Amounts sufficient for the Debtor or the Disbursing Agent to pay in full all Allowed Administrative Expense Claims that are the responsibility of the Debtor in accordance with this Section 2.1, including all Fee Claims, shall be funded on the Effective Date from the Cash on hand with the Debtor and the Receiver. The Receiver Claim shall be considered an Administrative Expense Claim.

2.2  *Fee Claims.*

(a)  All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtor, the U.S. Trustee, counsel to VNB, and counsel for the Disbursing Agent on or before the date that is thirty (30) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date. Objections to Fee Claims must be filed and served on counsel to the Debtor, the U.S. Trustee, counsel to VNB, counsel for the Disbursing Agent, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtor and the party requesting compensation of a Fee Claim, or as approved by the Court).

(b)  Subject to Section 2.2(e) hereof, Allowed Fee Claims shall be paid in full, in Cash, by the Disbursing Agent in such amounts as are Allowed by the Bankruptcy Court: (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor, or the Disbursing Agent.

(c)  No later than ten (10) days prior to the Effective Date, holders of Fee Claims shall provide an estimate of unpaid Fee Claims incurred in rendering services prior to the Effective Date to the Debtor and VNB and the Debtor and Receiver shall, subject to the Plan, separately escrow from funds of the Debtor such estimated amounts in an escrow account for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties. If a holder of a Fee Claim does not provide an estimate, the Debtor or the Disbursing Agent, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim, and provide notice thereof to VNB and the Debtor. The escrow account shall be treated as a trust account for the benefit of holders of Fee Claims and otherwise subject to the terms of the Plan. When all such Allowed Fee Claims have been paid in full, any remaining amounts shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Debtor for distribution in accordance with the terms hereof without any further action or order of the Bankruptcy Court.

(d)  The Disbursing Agent is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date, including for services rendered or expenses incurred by the Debtor's or the Disbursing Agent's professionals, in the ordinary course and without the need for Bankruptcy Court approval.

(e)  The source of payment shall be from the Receiver Funds. The payments to Northgate shall be in the form of the buyer's premium as defined in the Bid Procedures and payable by the Purchaser.

(f)  NYC Priority Tax Claims and Administrative Claims shall be paid on the Sale closing date, from the proceeds of the Sale. The NYC Tax and Administrative Claims total $1,436,850. Additionally there are open violations on the Property in the estimated amount of $50,000.00 which shall be paid at the Sale closing.

2.3  *Priority Tax Claims*.

Each holder of an allowed Priority Tax Claim shall receive treatment in a manner consistent with Bankruptcy Code section 1129(a)(2). Except to the extent that a holder of a Priority Tax Claim agrees to less favorable treatment, Priority Tax Claims shall be satisfied, disputed, pursued,

or otherwise reconciled in the ordinary course by the Debtor or the Disbursing Agent, who shall retain the rights to any defenses and setoffs against any Priority Tax Claim available to the Debtor. Notwithstanding, all Priority Tax Claims of the City of New York shall be paid in full, in Cash at the Sale closing.

**ARTICLE III**

**CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1.    ***Classification in General***.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under Bankruptcy Code sections 1122 and 1123(a)(1); provided, however, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.    ***Summary of Classification***.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are: (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with Bankruptcy Code section 1126; and (c) presumed to accept or deemed to reject the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | VNB Senior Secured Claim | Impaired | Yes |
| 2 | SBA Claim | Impaired | Yes |
| 3 | Mechanic's Lien Claim | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Interests | Impaired | Yes |

3.3.    ***Elimination of Vacant Classes***.

Any Class of Claims against the Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) with respect to that Class.

3.4. ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtor and VNB shall request that the Bankruptcy Court at the Confirmation Hearing deem the Plan accepted by such Class.

3.5. ***Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b).***

The Debtor and VNB shall seek confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any Class of Claims or Interests that rejects or is deemed to reject the Plan. The Debtor and VNB reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to Bankruptcy Code section 1129(b) requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS FOR THE DEBTOR.

4.1. ***Treatment in General.***

Subject to Section 10.6(c) hereof, on the Effective Date, each holder of an Allowed Claim or Interest shall receive under the Plan the treatment described in this Article IV in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's allowed Claim or Interest, except to the extent different treatment is agreed to by the Debtor or Disbursing Agent and the applicable holder of such Allowed Claim or Interest.

4.2. ***Class 1: VNB Senior Secured Claim.***

VNB holds a Class 1 Secured Claim in the Allowed amount of $6,250,469.72  which will be treated as follows:

(a)    Subject to Section 10.6(c) hereof, in the event of a Sale, in exchange for the full and final satisfaction, settlement, release, and discharge of its Senior Secured Claim, VNB shall receive the remaining proceeds of the Sale promptly after the payment in full in Cash of all of the following: (i)  all regular closing costs and adjustments; (ii) Allowed Fee Claims to the extent not paid from the Receiver Funds; (iii) Allowed Unclassified Claims; (iv) Allowed NYC Tax and Administrative Claims; and (v) monetary violations due at closing. VNB shall also receive any remaining Cash on hand from the Debtor and 8200 receivership in the possession of the Receiver after all Professional Fee Claims of DHC, FIA, and the Receiver are paid in full.

(b)    The unpaid balance of VNB's claims shall be treated as a Class 4 Unsecured Claim.

Class 1 is impaired. VNB is entitled to vote to accept or reject the Plan.

4.3.    ***Class 2: SBA Claim.***

The SBA holds a Class 2 Secured Claim in the Allowed amount of $438,396.67, which will be treated as follows:

(a)    In the event of a Sale, in exchange for the full and final satisfaction, settlement, release, and discharge of its SBA Claim, the holder of the SBA Claim shall receive its Pro Rata Share from the remaining proceeds of the Sale promptly after the payment in full in Cash of all of the following: (i) all regular closing costs and adjustments; (ii) Allowed Fee Claims; (iii) Allowed Unclassified Claims; (iv) Allowed NYC Tax and Administrative Claims; (v) monetary violations due at closing; and (vi) the Allowed VNB Senior Secured Claim; provided, however, that the balance of any deficiency shall be treated as a Class 4 General Unsecured Claim.

As a result of the Sale, Class 2 shall receive no distribution under the Plan. Class 2 is impaired and deemed to reject the Plan.

4.4.    ***Class 3: Mechanic's Lien Claim***

Class 3 includes the Mechanic's Lien of Good-Will Mechanical Corp. in the Allowed amount of $150,000.00, and will be treated as follows:

(a)    In the event of a Sale, in exchange for the full and final satisfaction, settlement, release, and discharge of the Mechanic's Lien,  the Class 3 Mechanic's Lien holder shall receive its Pro Rata Share from the remaining proceeds of the Sale promptly after the payment in full in Cash of all of the following: (i) all regular closing costs and adjustments; (ii) Allowed Fee Claims; (iii) Allowed Unclassified Claims; (iv) Allowed NYC Tax and Administrative Claims; (v) monetary violations due at closing; (vi) the Allowed VNB Senior Secured Claim; and (vii) the SBA Claim; provided, however, that the balance of any deficiency shall be treated as a Class 4 General Unsecured Claim.

As a result of the Sale, Class 3 shall receive no distribution under the Plan. Class 3 is impaired and deemed to reject the Plan.

4.5.    ***Class 4: Unsecured Claims.***

The Class 4 Unsecured Claims other than VNB's, the SBA's, and the Mechanic's lien's are in the allowed aggregate amount of $2,223.40 and will be treated as follows:

(a)    Subject to Section 10.6(c) hereof, in the event of a Sale, in exchange for the full and final satisfaction, settlement, release, and discharge of its Allowed Unsecured Claim, each holder of an Allowed Unsecured Claim shall receive its Pro Rata Share from the remaining proceeds of the Sale promptly after the payment in full in Cash of all of the following: (i) all regular closing costs and adjustments; (ii) Allowed Fee Claims; (iii) Allowed Unclassified Claims; (iv) Allowed NYC Tax and Administrative Claims; (v) monetary violations due at closing; (vi) the Allowed VNB Senior Secured Claim; (vii) the SBA Claim; and (viii) the Mechanic's Lien Claim.

(b)    VNB shall have the right to vote its Class 4 Unsecured Claim to accept or reject the Plan, however it waives its right to any distribution under the Plan on account of its Class 4 Claim.

As a result of the Sale Class 4 shall receive no distribution under the Plan. Class 4 is impaired and deemed to reject the Plan.

4.6.  ***Class 5: Interests***

(a)  As a result of the Sale, Class 5 receives no distribution on account of its interests and is deemed to reject the Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

5.1  ***The Sale of the Property***

(a)  <u>The Sale Process</u>.

(i)  The Debtor, with the assistance of the Broker, will sell the Property to the Purchaser in accordance with the Bid Procedures and results of the Auction, free and clear of any and all Liens, Claims, and encumbrances (except for Assigned Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law.  The Bankruptcy Court shall approve the Debtor's and VNB's selection of the Purchaser as a condition to confirmation of the Plan.

(ii)  The Sale of the Property will be consummated by way of a sale implemented under Bankruptcy Code sections 363(b), (f), 1123, 1129, 1146(a), and the Plan.  The Debtor, the Purchaser and VNB agree that the Purchase Price represents fair and reasonable consideration for the Property, and that the Sale represents a sound exercise of the Debtor's business judgment.

(b)  <u>The Closing</u>. On the Closing Date, the Purchaser shall consummate the purchase of the Property in accordance with the Bid Procedures.

(c)  <u>Vesting of Assets</u>.  Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall depending on when the Sale occurs, vest in the Debtor or the Purchaser, as applicable, free and clear of all Liens, Claims and encumbrances (other than Assigned Contracts).

(d)  <u>Sale Proceeds</u>. The Sale Proceeds shall be used solely to fund the Plan and utilized to satisfy payments consistent with the terms of this Plan.

(e)  <u>Transfer Taxes</u>. Pursuant to Bankruptcy Code section 1146(a), the Sale and any other transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax

14

or governmental assessment. Such exemption specifically applies, without limitation, to the Sale of the Property to the Purchaser.

5.2     *Administration and Liquidation of the Debtor*

(a)     <u>Existing Managers and Officers</u>. In the event of a Sale, upon the Effective Date, all of the Debtor's managers and officers will continue to have power or authority to act for the Debtor, the Estate or the post-Effective Date Estate, pursuant to the Plan, and otherwise consummate the Plan.

(b)     <u>Dissolution of the Debtor</u>. Upon the conclusion of the Wind Down in accordance with the Plan, the Debtor shall be dissolved by filing on its behalf, a certificate of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the members, the board of directors or similar governing body of the Debtor.

5.3     *Effectuating Documents; Further Transactions.*

(a)     Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, in each case, in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the limited liability company structure of the Debtor, and any limited liability company action required by the Debtor, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the members, directors, managers, or officers of the Debtor. On or before the Effective Date, the authorized officers of the Debtor shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor, including, but not limited to, any and all other agreements, documents, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 5.3 shall be effective notwithstanding any requirements under non-bankruptcy law.

(b)     On or as soon as practicable after the Effective Date, the Debtor may take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject in all respects to the provisions of the Plan, including: (i) the execution and delivery of appropriate agreements or other documents of restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates of dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

(c)     The Disbursing Agent shall take all such other actions in furtherance of its duties and responsibilities under the Plan to monetize all of the Debtor's remaining assets (including any Avoidance Actions or other Causes of Action) and distribute the proceeds thereof in accordance with the Plan.

15

5.4    <u>Certain Tax Matters</u>. For U.S. federal income tax purposes, and comparable state and local tax purposes (as applicable):

(a)    The Debtor shall implement the Plan in a manner such that it shall continue to be treated as a disregarded entity through the implementation of the Plan on the Effective Date and shall not take any action that would cause the Debtor to be treated as an association taxable as a corporation at any time.

(b)    The Debtor and all holders of Claims shall report consistent with this Section 5.4(b) for all income tax purposes, and shall: (i) use commercially reasonable efforts to cause consistent reporting therewith by others; or (ii) not join in, encourage, and/or support inconsistent reporting therewith by others.

5.5.    ***Cancellation of Liens.***

Except as otherwise specifically provided herein, any Lien securing a Claim shall be deemed released, and the holder of such Secured Claim shall be directed to release any collateral or other property of the Debtor held by such holder and to take such actions as may be requested by the Debtor or the Disbursing Agent, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtor.

5.6.    ***Closing of the Chapter 11 Case.***

After the Estate has been fully administered, the Debtor or Disbursing Agent shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE VI

## DISTRIBUTIONS

6.1    ***Distributions Generally***.

The Disbursing Agent, shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2    ***Distribution Effective Date***.

On the Effective Date, the Debtor's records of the Classes of Claims or Interests shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests. With respect to payment of any Cure Amount or Assumption Disputes, the Disbursing Agent shall not have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim or Cure Amount.

6.3    ***Date of Distributions***.

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan by the Disbursing Agent shall be made within ten (10) Business Days following the Effective Date, as determined in accordance with the Plan, including, without limitation, the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter.

6.4    ***Disbursing Agent***.

All distributions under the Plan shall be made by the Disbursing Agent and the Debtor, as provided herein.

6.5    ***Rights and Powers of Disbursing Agent***.

(a)    From and after the Effective Date, the Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtor and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)    The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.6    ***Fees and Expenses of Disbursing Agent***.

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash, subject to the Plan Administration Agreement (if applicable).

6.7    ***Postpetition Interest on Claims***.

Except as otherwise provided in the Plan or the Confirmation Order, interest shall not accrue or be paid on any Claims against the Debtor on or after the Petition Date.

6.8    *Delivery of Distributions*.

(f)    Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made by the Debtor or Disbursing Agent to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtor.  In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until the Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 6.19 of the Plan.

6.9.    *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10.    *Unclaimed Property*.

Undeliverable distributions shall remain in the possession of the Debtor until such time as a distribution becomes deliverable or a holder accepts distribution, or such distribution reverts back to the Debtor and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of distribution and the holder of the Claim entitled to such distribution shall be discharged and forever barred. After such date, all unclaimed property or interest in property of the Debtor shall revert to and vest in and shall be thereafter disbursed to the holders of Unsecured Claims, and all unclaimed property or interest in property shall be discharged and forever barred.

6.11.    *Time Bar to Cash Payments*.

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall immediately and irrevocably revert to the Debtor and any Claim on account of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.12.    *Manner of Payment Under Plan*.

Except as otherwise specifically provided in the Plan, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

### 6.13.    *Minimum Cash Distributions*.

Except with respect to any Claim that is Unimpaired under the Plan, the Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided, however, that if any distribution is not made pursuant to this Section 6.13, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

### 6.14.    *Setoff and Recoupment*.

The Debtor, or its designee—including, without limitation, the Disbursing Agent—may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtor may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action); provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or its successor, of any claims, rights, or Causes of Action that the Debtor, or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action).

### 6.15.    *Allocation of Distributions between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Debtor), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the portion of such Allowed Claim (if any) that reflects reimbursable expenses, and then to the accrued and unpaid interest on such Allowed Claim.

### 6.16.    *No Distribution in Excess of Amount of Allowed Claim*.

No holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

### 6.17.    *Distributions Free and Clear*.

Any distributions under the Plan shall be free and clear of and Liens, Claims, and encumbrances, and no other Entity, including the Debtor, shall have any interest, legal, beneficial, or otherwise, in any amounts transferred pursuant to the Plan.

### 6.18.    *Withholding and Reporting Requirements*.

(a)    Withholding Rights.  In connection with the Plan, the Debtor or the Disbursing Agent making distributions pursuant to the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Any Disbursing Agent or such other Entity designated thereby, as applicable, and any other Person making distributions pursuant to the Plan, shall be authorized to take any actions that they determine, in their reasonable discretion, to be necessary or appropriate to comply with

such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  Each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  The Disbursing Agent has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)　　Forms.  Any party entitled to receive any property as a distribution under the Plan shall, upon request of the Disbursing Agent, deliver to the Disbursing Agent an appropriate Internal Revenue Service Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other reasonably requested tax information.  If such request is made by the Disbursing Agent and the holder fails to comply before the earlier of: (i) the date that is one hundred and eighty (180) days after the request is made; and (ii) the date that is one hundred and eighty (180) days after the date of distribution, the amount of any such distribution shall irrevocably revert to the Debtor, and any Claim on account of such distribution shall be discharged and forever barred from assertion against the Debtor, or its property.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

### 7.1.　*Objections to Claims*.

As of the Effective Date, the Disbursing Agent shall be entitled to object to Impaired Claims and shall have and retain any and all rights and defenses that the Debtor had with regard to any Impaired Claim which the Debtor or the Disbursing Agent, may object to or otherwise challenge in the ordinary course. Nothing under the Plan shall affect the Debtor's claims, causes of action, rights, or defenses in respect of any Impaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Impaired Claims.  Any objections to Claims shall be served and filed by the Debtor or the Disbursing Agent, on or before the later of: (a) one hundred and twenty (120) days after the Effective Date; and (b) on such other date as ordered by the Bankruptcy Court for cause.

### 7.2.　*Resolution of Disputed Administrative and Disputed Claims*.

On and after the Effective Date, except as otherwise provided herein, all Unimpaired Claims will be satisfied, disputed, pursued, or otherwise reconciled by the Disbursing Agent.  From and after the Effective Date, the the Debtor, or the Disbursing Agent, may satisfy, dispute, pursue, or otherwise resolve any Impaired Claim without approval of the Bankruptcy Court, and shall have the exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Impaired Claims without further approval of the Bankruptcy Court.

7.3.    ***Payments and Distributions with Respect to Disputed Claims***.

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, the Debtor or the Disbursing Agent, shall not be required to make any payment or distribution provided hereunder on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4.    ***Distributions After Allowance***.

After such time as a Disputed Claim becomes an Allowed Claim, in whole or in part, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in the Plan, with or without interest as provided in the Plan. Such distributions shall be made in accordance with Article VI of the Plan.

7.5.    ***Estimation of Claims***.

The Debtor or the Disbursing Agent, may: (a) determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Impaired Claims in the Bankruptcy Court; and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Impaired Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtor previously objected to such Impaired Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Impaired Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Impaired Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Impaired Claim, the Debtor and the Disbursing Agent may pursue supplementary proceedings to object to the allowance of such Claim; <u>provided, however,</u> that such limitation shall not apply to Claims requested by the Debtor to be estimated for voting purposes only.

7.6.    ***No Distributions Pending Allowance***.

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.7.    ***Claim Resolution Procedures Cumulative***.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.8.    *Insured Claims*.

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtor's insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Court.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    *General Treatment*.

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases, including the residential and commercial leases pertaining to the Property, and to which the Debtor is a party shall be deemed assumed by the Debtor, unless such contract or unexpired lease: (i) is specifically designated by the Debtor to be rejected; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) was previously assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court; or (iv) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor on or before the Confirmation Date.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption, assumption and assignment, or rejection provided for in the Plan pursuant to Bankrutpcy Code sections 365(a) and 1123 and a determination by the Bankruptcy Court that the Debtor or the Purchaser, as applicable, has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Debtor or the Purchaser, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

8.2.    *The Assumption and Assignment Procedures*.

The Assumption and Assignment Procedures governing the assumption and assignment of the Assigned Contracts to be assumed by the Debtor and assigned to the Purchaser as part of the Sale, if applicable, are contained in the Bid Procedeures Order.  Notwithstanding anything to the contrary contained in the Plan, in the event of any conflict between the Plan, the Confirmation Order and the Bid Procedures Order respecting the Assumption and Assignment Procedures, the Bid Procedures Order shall govern and control.

8.3.    *Rejection Damages Claims*.

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be

enforceable against the Debtor, or its Property or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor and if applicable, the Disbursing Agent, no later than thirty (30) days after the later of: (i) the Confirmation Date; or (ii) the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as Unsecured Claims.

8.4.    *Insurance Policies*.

Notwithstanding anything to the contrary in the Definitive Documents, any claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (i) all insurance policies issued or providing coverage to the Debtor shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety and assigned to the Purchaser pursuant to Bankruptcy Code sections 365 and 1123, and the Purchaser shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of the Debtor under such insurance policies, without the need or requirement for an insurer to file a proof of Claim, Administrative Expense Claim or objection to any Cure Amount; (ii) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (iii) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (a) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court: (I) workers' compensation claims; (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim; and (III) all costs in relation to each of the foregoing; and (c) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies.

8.5.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed or assumed and assigned shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.6.    *Reservation of Rights*.

(a)     Neither the exclusion nor inclusion of any contract or lease by the Debtor on any exhibit, schedule, or other annex to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtor that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtor or its affiliates have any liability thereunder.

(b)      Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor and the Purchaser, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

# ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF PLAN AND EFFECTIVE DATE.

9.1.      *Conditions Precedent to Confirmation of Plan*.

The following are conditions precedent to confirmation of the Plan:

(a)      the Disclosure Statement Order shall have been entered;

(b)      in the event of a Sale, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed and be in conformity with the Plan; and

(c)      in the event of a Sale, the Bankruptcy Court shall have approved the selection of the Successful Bidder.

9.2.      *Conditions Precedent to Effective Date*.

The following are conditions precedent to the Effective Date of the Plan:

(a)      the Confirmation Order shall have been entered and have become a Final Order and shall be in full force and effect;

(b)      all other actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(c)      all governmental approvals, orders and consents necessary in connection with the Plan, including Bankruptcy Court approval, shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the consummation of the Plan;

(d)      the conditions to the obligations of the Debtor to consummate the Closing set forth in the Sale Contract shall have been satisfied or waived in accordance with the terms thereof and the Closing shall have occurred; and

9.3.    *Waiver of Conditions Precedent*.

Each of the conditions precedent in Section 9.1 and Section 9.2 of the Plan, other than those set forth in Section 9.1(a), Section 9.2(a), and Section 10.2(f), may be waived in writing with the consent of the Debtor and VNB, provided, however, the requirement that the Confirmation Order become a Final Order set forth in Section 9.2(a) may be waived in writing by the Debtor.

9.4.    *Effect of Failure of a Condition*.

If the conditions listed in Section 9.2 of the Plan are not satisfied or waived in accordance with Section 9.3 of the Plan on or before the date that is thirty (30) days after the Bankruptcy Court enteres the Confirmation Order, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtor, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, VNB, or any other Entity.

# ARTICLE X

# EFFECT OF CONFIRMATION OF PLAN

10.1.    *Vesting of Assets*.

On the Effective Date, pursuant to Bankruptcy Code sections 1141(b) and (c), any and all remaining property of the Debtor's Estate, including the Excluded Assets, shall vest in the Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan and the Confirmation Order. On and after the Effective Date, the Disbursing Agent, or the Debtor may take any action, including, without limitation, the assertion of any Causes of Action; the use, acquisition, Refianance, Sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Disbursing Agent may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2.    *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders are: (a) Impaired or Unimpaired under the Plan; (b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) will receive any distribution under the Plan.

10.3.    ***Discharge of Claims and Termination of Interests***.

In the event of a Sale, the Debtor shall not receive a discharge.

10.4.    ***Term of Injunctions or Stays***.

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all the Chapter 11 Case.

10.5.    ***Injunction***.

(a)    ***Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan, <u>provided</u>, <u>however</u>, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to the Plan.***

(b)    ***Subject to Section 10.6(c) hereof, and except as otherwise as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as expressly agreed to by the Debtor or the Disbursing Agent, and a holder of any Unimpaired Claim, Impaired Claim, or Impaired Interest, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtor that will be or are extinguished, discharged, or released pursuant to the Plan from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor or the property of any of the Debtor or the Disbursing Agent; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor or the property of any of the Debtor or the Disbursing Agent; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, or the property of any of the Debtor or the Disbursing Agent; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor or the Disbursing Agent, or against property or interests in property of any of the Debtor or the Disbursing Agent, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.***

(c)    ***By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have***

26

*affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.*

(d)    *The injunctions in this Section 10.5 shall extend to any successors of the Debtor (including the Disbursing Agent), and their respective property and interests in property.*

10.6.    *Releases.*

(a)    **Exculpation.**

*Subject to Section 10.6(c) hereof, and subject to the limitations of Section 1125 of the Bankruptcy Code, the Exculpated Parties, nor any of their respective, managers, members, nor any of their agents or employees (acting in such capacity), nor any professional person employed by them, shall have or incur any liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages. In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability. Nothing in the Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtor, (ii) any of the Debtor's members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns. In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.*

(b)    **Mutual Releases.**

*Subject to Section 10.6(c) hereof, as of the Effective Date, except: (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) for the right to defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions made by the Debtor, and VNB and their respective officers, directors, managers, employees, agents, representatives, sucessors, and assignees (the "Released Parties") to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed released and discharged by each of the other Released Parties, in each case, from any and all claims, Interests, or Causes of Action whatsoever, including any derivative claims asserted on behalf of*

27

*a Released Party, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert based on, relating to, or arising from, in whole or in part, the Debtor, the restructuring, the Chapter 11 Case, the postpetition marketing and sale process, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all of the foregoing cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, however, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or fraud, in each case as determined by a Final Order. The Persons and Entities in (i) through (iii) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties. Furthermore, nothing herein shall release or waive any claims that VNB has against the Debtor's principal, Ira Epstein, in his individual capacity.*

(c)     *Notwithstanding anything to the contrary contained in the Plan, the Plan shall not release or waive, and VNB expressly preserves the right to pursue, any and all claims it had or has against the Debtor's principal, Ira Epstein, in his individual capacity, including, without limitation, any claims VNB has against Mr. Epstein arising from or related to (i) that certain Carveout Guaranty of Payment dated as of August 30, 2018 executed by Mr. Epstein and delivered to VNB, and/or (ii) that certain Guaranty of Payment dated August 30, 2018 executed by Mr. Epstein and delivered to VNB.*

(d)     *Notwithstanding anything to the contrary herein, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.*

10.7.     *Retention of Causes of Action/Reservation of Rights.*

Except as otherwise provided in Sections 10.5, 10.6, and 10.7 of the Plan, or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of its Estate in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor. Except as otherwise provided in the Plan, the Debtor and the Disbursing Agent shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1.    ***Retention of Jurisdiction***.

On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter, and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all Fee Claims;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Administration Agreement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to hear and determine disputes arising in connection with the Plan Administration Agreement, or any agreement, instrument, or other document governing or relating to the Plan Administration Agreement;

(k)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146 (including any Disputed Claims for taxes and any requests for expedited determinations under Bankruptcy Code section 505(b);

(n)      to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, exculpations, and injunctions issued thereunder;

(o)      to resolve disputes concerning Disputed Claims or the administration thereof;

(p)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)      to enter a final decree closing the Chapter 11 Case;

(r)      to recover all Assets of the Debtor and property of the Debtor's Estate, wherever located;

(s)      to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, or any deadline for responding or objection to a Cure Amount, in each case, for any purpose;

(t)      to hear and determine matters or disputes arising from, or in connection with, the appointment of a successor Disbursing Agent in the event of the Disbursing Agent's death, disability, dissolution, or removal;

(u)      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor or the Disbursing Agent pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions; and

(v)      to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in Bankruptcy Code sections 502 or 503, other than defenses or limits that are asserted under non-bankruptcy law pursuant to Bankruptcy section 502(b)(1).

### 11.2.    *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or

failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE XII

## MISCELLANEOUS PROVISIONS.

### 12.1.    *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, with respect to any Claims, the Disbursing Agent if applicable, or the Debtor shall make all required filings and pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtor's case, until such time as a final decree is entered closing the Debtor's case, a Final Order converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtor's case is entered.

### 12.2.    *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

### 12.3.    *Plan Supplement*.

In the event of a Sale, the Plan Supplement shall be filed with the Clerk of the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

### 12.4.    *Requests for Expedited Determination of Taxes*.

The Disbursing Agent shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date and through the Effective Date.

### 12.5.    *Exemption from Certain Transfer Taxes*.

On the event of a Sale occurring after the Confirmation Date pursuant to Bankruptcy Code section 1146(a): (a) the making or delivery of any instrument of transfer in connection or furtherance of the Plan; (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan; (c) the creation of any Lien, mortgage, deed of trust, or other security interest; (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan; and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing

or recording fee, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York (including by reason of a change in the equity ownership of the Debtor), (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code (including by reason of a change in the equity ownership of the Debtor) and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded (including, without limitation, the Register of the City of New York) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax. All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Property, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of Bankruptcy section 1146(a) and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

12.6.  ***Amendments***.

(a)    Plan Modifications.  The Debtor and VNB reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy Bankruptcy Code section 1129(b), and (ii) after entry of the Confirmation Order, in the manner provided for by Bankruptcy Code section 1127 or as otherwise permitted by law, in each case without additional disclosure pursuant to Bankruptcy Code section 1125.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, The Debtor and VNB may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)    Other Amendments.  Before the Effective Date, VNB may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

12.7.  ***Effectuating Documents and Further Transactions***.

VNB and the Debtor or Disbursing Agent, if applicable, are each authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.8.    *Revocation or Withdrawal of Plan*.

The Debtor and VNB reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission of any sort by the Debtor or any other Entity.  This provision shall have no adverse impact on the rights of the Debtor in respect of any such revocation or withdrawal.

12.9.    *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of VNB and the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or further modified without the consent of (i) the Debtor, (ii) VNB, and (iii) the Plan Adminsitrator, but only to the extent such deletions or modifications negatively impact the Disbursing Agent, and (c) nonseverable and mutually dependent.

12.10.    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; provided, however, that corporate or entity governance matters relating to the Debtor or the Disbursing Agent, shall be governed by the laws of the state of incorporation or organization of the Debtor.

12.11.    *Dates of Actions to Implement the Plan*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12.  ***Immediate Binding Effect***.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

12.13.  ***Successor and Assigns***.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.14.  ***Entire Agreement***.

On the Effective Date, the Plan, the Plan Supplement, if applicable, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which shall be deemed to become merged and integrated into the Plan.

12.15.  ***Exhibits to Plan***.

All exhibits, schedules, supplements, and appendices to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

12.16.  ***Notices***.

All notices, requests, and demands to or upon the Debtor, the Disbursing Agent, or VNB as applicable, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      (a)      If to the Debtor/Disbusing Agent:

            c/o 8200 Realty Associates LLC
            8200 Bay Parkway
            Brooklyn, NY 11214
            Attn:  Mr. Ira J. Epstein
            Email:  eps5310@yahoo.com

            -and-

Jonathan S. Pasternak, Esq.
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, NY 10158
Email: jsp@dhclegal.com
Tel: (212) 557-7200

(b)    If to VNB:

Valley National Bank
c/o Angela Morisco
1 Passaic Avenue
Fairfield, NJ 07004

-and-

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10153
Attn:   Steven Smith, Esq.
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500

Dated: September 20, 2024

Respectfully submitted,

*/s/ Ira Epstein*
Ira Epstein

**DAVIDOFF HUTCHER & CITRON LLP**
*Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200

By: */s/ Jonathan S. Pasternak*
      Jonathan S. Pasternak

**HERRICK, FEINSTEIN LLP**
*Attorneys for Valley National Bank*
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

By:_/s/ Steven B. Smith_
    Steven B. Smith